**United States Bankruptcy Court**
**Northern District of Florida**

In re    **TIFCO ENTERPRISES, INC**      Case No.    14-50424

                             Debtor(s)                      Chapter    **11**

# TIFCO ENTERPRISES, INC'S DISCLOSURE STATEMENT

CHARLES M. WYNN LAW OFFICE, P.A.

CHARLES M. WYNN, ESQ.

PO BOX 146

MARIANNA, FL  32447-0146

850-526-3520

ATTORNEY FOR THE DEBTOR

Court@Wynnlaw-fl.com

*Table of Contents*

Page
I.    Introduction
      A.    Purpose of this document
      B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
      C.    Disclaimer

II.   Background
      A.    Description and History of Debtor's Business
      B.    Insiders of the Debtor
      C.    Management of the Debtor Before and During the Bankruptcy
      D.    Events Leading to a Chapter 11 Filing
      E.    Significant Events During the Bankruptcy Case
      F.    Projected Recovery of Avoidable Transfers
      G.    Claims Objections
      H.    Current and Historical Financial Conditions

III.  Summary of the Plan of Reorganizations and Treatment of Claims and Equity Interests
      A.    What is the Purpose of the Plan of Reorganization?
      B.    Unclassified Claims
      C.    Classes of Claims and Equity of Interests
      D.    Means of Implementing the Plan
      E.    Risk Factors
      F.    Executory Contracts and Unexpired Leases
      G.    Tax Consequences of Plan

IV.   Confirmation Requirements and Procedures
      A.    Who May Vote or Object
      B.    Votes Necessary to Confirm the Plan
      C.    Liquidation Analysis
      D.    Feasibility

V.    Effects of Confirmation of the Plan
      A.    Discharge of Debtor
      B.    Modification of Plan
      C.    Final Decree

1.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Tifco Enterprises, Inc., a Florida corporation (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan (the "Plan") filed by Tifco Enterprises, Inc. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

A.    Purpose of This Document

This Disclosure Statement describes:

> The Debtor and significant events during the bankruptcy case,

> How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

> Who can vote on or object to the Plan,

> What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

> Why Tifco Enterprises, Inc. believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

> The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan

The hearing at which the Court will determine whether to approve this Disclosure Statement and confirm the Plan will take place pursuant to the Notice of Hearing which is attached to this Disclosure Statement or will be mailed to you by the Court. The hearing will be held at the US Courthouse, 30 W. Government Street, Panama City, FL on the date and time of the Notice unless otherwise indicated within the Notice. Please read the Notice carefully.

3

2.     Deadline For Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Charles M. Wynn, Esq., PO Box 146, Marianna, FL 32447.  See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the date set in the Court Order which accompanies the Plan, Disclosure Statement and Ballot or it will not be counted.

3.     Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the parties indicated in the Order and Notice of Hearing which is included with this Disclosure statement or sent separately by the Court.

4.     Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Charles M. Wynn, Esq. at Charles M. Wynn Law Offices, P. A., P.O. Box 146, 4436 Clinton Street, Marianna, FL  32447, (850) 526-3520.

C.     Disclaimer

The Court is expected to approve this Disclosure Statement at the hearing which is noticed as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.  The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan.  Objections to the adequacy of this Disclosure Statement may be filed as set forth in the Order and Notice of Hearing.

II.     BACKGROUND

A.     Description and History of the Debtor's Business

The Debtor is a Florida corporation which was incorporated on December 20, 2000 by Jesus Antonio Muina.  The following is a timeline of the business:

- 1999: Business Opened- Started doing pest control, moved into insulation   when cellulose insulation hit the market- pesticides built into product.
- 2000: Started insulating new residential houses, picking up new contractors, etc. and incorporated in December, 2000.
- 2000- 2007: The business grew at a rate between 25-50% every year, with business growing at such a fast rate Tifco started broadening its' business presence into Air Conditioning,

4

Garage Doors, Shelving, and Fireplaces.  The net income usually ran between $50,000-$150,000 during this time period.

- 2007- 2008: The construction market as well as the global economy crashed. With growth happening at such a fast pace, when the market crashed Tifco had to control expenses and cut back on different ventures that weren't quite as profitable as others.
- 2008: The registered license holder for the air conditioning portion of the business split off on his own. With Tifco still operating in insulation, pest control, garage doors, shelving, and fireplaces.
- 2010:  The pest control division of the company was split into its' own entity, completely separate from Tifco.
- 2012: The original Director of Operations from the start up of the company Beverly Pitts retired.  The pest control company was sold. A new Director of Operations was hired. The unsecured debt the company held when Beverly Pitts retired was at approximately $75,000.00.
- 2012-2014: The new management that was brought in after Beverly Pitts retired lost $650,000 in the next two years.  This was due to poor management of employees, out of control spending, and employee theft. The owner was unaware that any of this was happening at the time, he was being told everything was running smoothly and there was nothing to worry about.  However, the company was completely out of control and going downhill fast.
- 2014- Present: Since January of this year (2014)  Tony Muina and Sean Bierman have resumed control over the company and taken the necessary steps to keep the business viable. The company is on pace to have a net income between $80,000- $100,000 this year, with total gross revenue of approximately $1,100,000.  There has been no employee theft and employees that were used to the old way of operating under old management have been released.

B.     Insiders of the Debtor

The following is a detailed list of the names of Debtor insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code").  No shares of stock are issued as the Debtor is a 501 ( c )(3) corporation.

The following for each insider is list all compensation paid by the Debtor or its affiliates to that person or entity prior to the commencement of the Debtor's bankruptcy case, as well as compensation paid during the pendency of this chapter 11 case:

| Name | Title | Duties &Responsibilities | Salary | Fringe Benefits |
|------|-------|--------------------------|--------|-----------------|
| Jesus Antonio Muina | President | Day to day business operations | $1,400.00 per week plus insurance, cell phone, and use of a vehicle. | None |

### C.    Management of the Debtor Before and During the Bankruptcy

During the twelve months prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") was Jesus Antonio Muina.

The Managers of the Debtor during the Debtor's chapter 11 case have been the same.

The present management of the Debtor is as follows:

Jesus Antonio Muina              President.

The business operates five days a week; except for Saturday and Sunday.

After the effective date of the order confirming the Plan, the directors of the Debtor, (collectively the "Post Confirmation Managers"), will be the same as those who managed the Debtor during the Chapter 11.

### D.    Events Leading to Chapter 11 Filing

The Debtor sought relief under Chapter 11 when the Debtor was unable to resolve pending accounts and law suits were being filed which jeopardized the viability of the company.

The Debtor was named as a defendant in a civil suit from an motor vehicle accident involving vehicles which had been given to Robert Carlisle to open his own business in the Pensacola area. Carlisle did not transfer the title to the vehicles and he continued to operate them. The Debtor's insurance company is defending the claim.

### E.    Significant Events During the Bankruptcy Case

Since the case has been filed the Debtor has operated as a Debtor in Possession under the Code.

The Debtor will timely file its Monthly Operating Reports and pay its quarterly fees while the case remains open.

F.    Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions at this time.

G.    Claims Objections

All objections to claims will be filed prior to the hearing on the Disclosure Statement and Plan. If an objection to a claim is pending and unresolved and even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

As required by local rules, all objections to claims will be filed more than 45 days prior to the date of confirmation hearing.

      H.      Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B. The valuation was by the Debtor, the Gulf County Tax Assessor, NADA.COM and Mallory Appraisals

A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case will be attached as an Exhibit C prior to circulation to creditors unless circulation occurs prior to any reports being due. The Debtor's monthly operating reports are/or will be on file with the court and are available for inspection. Reports are due on the 20th of the month commencing on the 20th of the month following the filing of the Petition For Relief.

      I.      Post Confirmation Restructure

III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.      Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

1.      Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated | Proposed Treatment |
|------|-----------|--------------------|

| | Amount Owed | |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court.<br><br>• Attorney fees paid by retainer of $10,000 has been paid by the Debtor plus costs of $5,862.00.<br><br>• Accountant fees will be paid upon application and order of the Court. | Debtor's attorney's fees are expected to approximate $10,000.00 or such greater amount as determined by time and billing records and as authorized by the Court upon application. | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan.<br><br>Accounting fees will be paid upon application and order of the Court. |
| Clerk's Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | | Trustee fees are current and shall be paid for each quarter the case remains open. |

2.      Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| NONE | | | |

C.      Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

8

1.     Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| | **Description** | Insider (Yes or No) | **Impairment** | |
|---|---|---|---|---|
| 2 | *Secure claim of:* Name = **Ameris Bank (184-1)** <br><br> Collateral Description = **real property located at 507 Hwy 71, Wewahitchka, FL** <br><br> Allowed Secured Amount = **$299,169.76** <br><br> Priority of lien = **first** | No | Impaired | The allowed secured claim of Class 2 creditor; Ameris Bank (184-1) holds a first mortgage on the property which is valued at $333,249.00 according to the Gulf County Tax Assessor. Ameris Bank as a secured claim in the approximate amount of $299,169.76 with no pre-petition arrearage. The debt is evidenced by a mortgage recorded in O.R. Book 452 pages 351, et. seq., of the Public Records of Gulf County, FL. The note and mortgage shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 20 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $2,015.94 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |

| 3 | Secured claim of:<br>**Ameris Bank (183-1)**<br><br>Collateral Description<br>=   **line of credit secured by real property at 507 Hwy 71, Wewahitchka, FL**<br><br>Allowed Secured Amount<br>= **$25,000.00**<br><br>Priority of lien<br>= **second mortgage** | No | Unimpaired | The allowed secured claim of Class 3 creditor; Ameris Bank (183-1) holds a first mortgage on the property which is valued at $333,249.00 according to the Gulf County Tax Assessor. Ameris Bank as a secured claim in the approximate amount of $25,000.00 with no pre-petition arrearage. The debt is evidenced by a second mortgage recorded in O.R. Book 452 pages 524, et. seq., of the Public Records of Gulf County, FL. The note and mortgage shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 20 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $268.23 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |
| 4 | Secured claim of:<br>**Apalachee Regional Planning Council**<br><br>Collateral Description<br>= **all inventory, equipment, and accounts receivable**<br><br>Allowed Secured Amount<br>= **$73,074.53**<br><br>Priority of lien = | No | Unimpaired | The allowed secured claim of Class 4 creditor; Appalachee Regional Planning Council holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $73,074.53 with no pre-petition arrearage. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State. The note and security agreement shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 6 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $1,185.35 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |

| 5 | Secured claim of: **Gulf County Tax Collector** <br><br> Collateral Description **= real property located at 507 Hwy 71, Wewahitchka, FL** <br><br> Allowed Secured Amount **= $6,388.97** <br><br> Priority of lien **=  property taxes** | No | Impaired | The allowed secured claim of Class 5 creditor; Gulf County Tax Collector <br> On the real property located at 507 Highway 71, Wewahitchka, FL in the approximate amount of $6,388.97 for 2014 real property taxes shall be paid at 18% interest over 60 months in the amount of $162.23 per month commencing thirty days after the effective date of confirmation. |
|---|---|---|---|---|
| 6 | Class 6 – Insulation Distributors, Inc. | No | Impaired | The allowed secured claim of Class 6 creditor; Insulation Distributors, Inc. holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $11,053.55. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State. The note and security agreement shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at the rate of $1,000.00 per month in addition to ongoing orders which are COD. Insulation Distributors, Inc. is an essential trade creditor and has agreed to the terms with the Debtor pre-petition in order for the Debtor to continue to be able to purchase product from the vendor. |
| 7 | Class 7– Insulation Distributors, Inc. | No | Unimpaired | The Class 7 creditor holds a mortgage on real property located at 507 Hwy 71, Wewahitchka, FL. The Debtor's mortgage shows  a debt of $43,908.69; and is recorded OR 494 PAGE 104, et. sq. of the Public Records of Gulf County, FL.  The debt has been paid in full. The note and mortgage held by Insulation Distributors, Inc. shall be cancelled of record by the recording of the Plan of Reorganization and the Order Confirming Plan in the Public Records of Gulf County, FL as the debt has been previously paid in full. |

| 8 | Class 8– Insulation Distributors, Inc. | No | Unimpaired | The Class 8 creditor holds a mortgage on real property located at 507 Hwy 71, Wewahitchka, FL. The Debtor's mortgage shows a debt of $61,689.12; and is recorded OR 520 PAGE 221, et. sq. of the Public Records of Gulf County, FL. The debt has been paid in full. The note and mortgage held by Insulation Distributors, Inc. shall be cancelled of record by the recording of the Plan of Reorganization and the Order Confirming Plan in the Public Records of Gulf County, FL as the debt has been previously paid in full. |
| 9 | Class 9 – On Deck | No | Impaired | The allowed secured claim of Class 9 creditor; On Deck, holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $22,147.90. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State. The account shall be evidenced by a new note in the amount of $22,147.90 which shall be repaid at 5.25% interest over a term of 5 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $420.50 per month or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |
| 10 | Class 10 – Wayne Dalton, a Division of Overhead Door Corporation | No | Impaired | The allowed secured claim of Class 10 creditor, Wayne Dalton which holds a purchase money security interest in inventory and goods purchased within 60 days of filing shall remain unimpaired as an essential trade creditor. The claim is approximately $17,933.58 which shall be paid in the ordinary course of business at the rate of $2,500.00 per month pursuant to a pre-petition agreement in order to allow the Debtor to continue to purchase goods and materials. Payments are applied to past due invoices first and then to present COD purchases. Interest is waived as long as the Debtor remains in good standing. |

| 11 | Class 11 – ThermaSeal, USA | No | Unimpaired | ThermaSeal, USA has an ongoing open account in which the Debtor purchases spray foam insulation on a weekly basis and pays for same weekly in the ordinary course of business. |
|----|----------------------------|-----|-----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Priority unsecured claim NONE | Impaired | **NA** |

3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  All claims less than $250.00 shall be paid in full for administrative convenience as indicated on the attached Exhibit of Proposed Payments.

The following chart identifies the Plan's proposed treatment of Classes 3 and 4, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 13 | General Unsecured Class consisting of claims more than $2,000.00. | Impaired | General unsecured creditors shall be paid on a pro rata basis according to the attached schedule from net disposable income during the term of the Plan. |
| 12 | General Unsecured Class consisting of claims less than $2,000.00 | Impaired | Allowed unsecured claims of **less than $2,0000.00 according to the attached payment schedule** shall be paid in full within thirty (30) days after the effective date of the Plan for administrative convenience. |
| 14 | Class 14 – Chaka Monchere Dixon, individually and as next friend of Xzavier Latrez Dixon, a minor and | Impaired | The Debtor's insurance carrier is defending the action brought be the Class 14 creditors; the stay will be lifted to allow the insurance company to defend the claim; in the event of any recovery in excess of policy limits; the |

13

| | | | |
|---|---|---|---|
| | Xanlyah Cereniti Tru Dixon, a minor and Jaketra Bonner, individually and as mother and next friend of Ny'gel Jarreall Malichi, a minor. | | claim, if allowed, will be treated as a Class 13 unsecured claim. |

4.    *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | NONE | | . |

**D.    Means of Implementing the Plan**

1.    *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

The Debtor will fund the Plan from general operations of the business.

2.    *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Title | Compensation |
|---|---|---|---|---|
| Jesus Antonio Muina | President | Yes | President | **$1,400.00 per week** |

**E.    Risk Factors**

The proposed Plan has the following risks: There are limited risk factors such as essential trade creditors could decide not to sell to the Debtor on a COD basis.

**F.    Executory Contracts and Unexpired Leases**

There are no executory contracts and unexpired leases that the Debtor will assume under the Plan.

14

All other executory contracts and unexpired leases have been rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

### G.    Tax Consequences of Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that  the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that there are 12 classes which are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1.

*What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim will be set by the Court by separate Order and/or Notice.**

2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.    *Who is Not Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half.(1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

   2.   *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## V.   EFFECT OF CONFIRMATION OF PLAN

### A.   DISCHARGE OF DEBTOR

*Compromise, Settlement and/or Discharge.* Upon substantial completion of payments under the Plan, the Debtor shall be discharged as provided by Chapter 11 of Title 11 of the United States Bankruptcy Code.

   (a) *Scope.* Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a full compromise, release and settlement, effective as the Effective date, of all claims including claims arising from the surrender of real property in satisfaction of the allowed secured claims on investment property. The compromise, release, and settlement of all claims against the Debtor as included within the Chapter 11 Plan, shall be effective as to each Claim against the Debtor regardless of whether a proof of claim there for was filed, whether the Claim is an Allowed Claim, whether the Claim has been asserted, or whether the holder thereof votes to accept the Plan. On the Effective Date, as to every compromised, settled, or discharged Claim, any holder of such Claim shall be precluded from asserting such Claim against the Debtor or the Reorganized Debtor's assets or properties, or any third party contracting pre-petition or post-petition with the Debtor, or any other or further Claim based upon any document, instrument, act, omission, transaction or other activity of any kind or nature relating to any Claim against the Debtor for deficiency from the liquidation of any real property.

   (b) *Injunction.* In accordance with sections 105, 524 and 1141 of the Bankruptcy Code, the compromise and settlement and/or discharge provided by this section and by the Confirmation Order, *inter alia,* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims discharged hereby and shall further act as a permanent injunction against any claimant from commencing any civil, administrative or other action against the Debtor, any officer, agent, or employee of the Debtor for any actions or liabilities arising from their employment, ownership or affiliation with the Debtor and not as a result of any personal guaranty on any indebtedness of the Debtor.

18

(c) *Satisfaction of Claims and Interests.* The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Respectfully submitted this _30_ day of December, 2014

TIFCO ENTERPRISES, INC

/s/ Jesus Antonio Muina, President

**Jesus Antonio Muina, President**


/s/ Charles M. Wynn
**Charles M. Wynn, Esq**
Charles M. Wynn Law Offices, P.A.
PO Box 146
Marianna, FL  32447
(850) 526-3520
FL Bar No. 0241695
Court@Wynnlaw-fl.com

# TIFCO ENTERPRISES, INC

# Exhibit A

## Plan

**United States Bankruptcy Court**
**Northern District of Florida**

In re     TIFCO ENTERPRISES, INC            Case No.     _14-50424_
                Debtor(s)                    Chapter      11

## PLAN OF REORGANIZATION
### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **TIFCO ENTERPRISES, INC**, (the "Debtor") from cash flow from operations.

This Plan provides for **10** class of secured claims; **2** classes of unsecured claims; and **0** classes of equity security holders.   Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 100% on the dollar.   This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.   A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.   **Your rights may be affected.   You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01     Class 1.  All allowed claims entitled to priority under §507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02     Class 2. The Claim of Ameris Bank (184-1), to the extent allowed as a secured claim under § 506 of the Code.

2.03     Class 3. The Claim of Ameris Bank (183-1), to the extent allowed as a secured claim under § 506 of the Code.

2.04.    Class 4. The claim of Appalachee Regional Planning Council, to the extent allowed as a secured claim under § 506 of the Code.

2.05     Class 5. The Claim of Gulf County Tax Collector, to the extent allowed as a secured claim under § 506 of the Code.

1

2.06    <u>Class 6.</u> The claim of  Insulation Distributors, Inc., to the extent allowed as a secured
claim under § 506 of the Code.

2.07    <u>Class 7</u>. The claim of  Insulation Distributors, Inc., to the extent allowed as a secured
claim under § 506 of the Code on a mortgage recorded OR 494 PAGE 104, et.sq.
of the Public Records of Gulf County, FL.

2.08    <u>Class 8.</u>   The claim of  Insulation Distributors, Inc., to the extent allowed as a secured
claim under § 506 of the Code, the Debtor's mortgage shows   a debt of
$61,689.12; and is recorded OR 520 PAGE 221, et.sq. of the Public Records of
Gulf County, FL.

2.09    <u>Class 9.</u> The claim of On Deck, to the extent allowed as a secured claim under §506
of the Code.

2.10    <u>Class 10.</u>   The claim of Wayne Dalton, a Division of Overhead Door Corporation to the
extent allowed as a secured claim under §506 of the Code.

2.11    <u>Class 11.</u>   The allowed claim of ThermaSeal, USA for spray foam purchased weekly in
the ordinary course of business.

2.12    <u>Class 12.</u> All unsecured claims allowed under §502 of the Code over $2,000.00.

2.13    <u>Class 13.</u> All unsecured claims allowed under § 502 of the Code less than $2,000.00.

2.14    <u>Class 14.</u> Chaka Monchere Dixon, individually and as next friend of Xzavier Latrez
Dixon, a minor and Xanlyah Cereniti Tru Dixon, a minor and Jaketra Bonner,
individually and as mother and next friend of Ny'gel Jarreall Malichi, a minor.

## ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims</u>.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims</u>.   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    <u>Priority Tax Claims</u>.   Each holder of a priority tax claim will be paid in full on the effective date of this Plan.   There are no priority tax claims known to the Debtor.

3.04    <u>United States Trustee Fees</u>.   All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a   Class 1 Priority Claim will be paid, in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – Ameris Bank (184-1) | Impaired | The allowed secured claim of Class 2 creditor; Ameris Bank (184-1) holds a first mortgage on the property which is valued at $333,249.00 according to the Gulf County Tax Assessor. Ameris Bank as a secured claim in the approximate amount of $299,169.76 with no pre-petition arrearage. The debt is evidenced by a mortgage 351 recorded in O.R. Book 452 pages 351, et. seq., of the Public Records of Gulf County, FL. The note and mortgage shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 20 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $2,015.94 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |
| Class 3 – Ameris Bank (183-1) | Impaired | The allowed secured claim of Class 3 creditor; Ameris Bank (183-1) holds a first mortgage on the property which is valued at $333,249.00 according to the Gulf County Tax Assessor. Ameris Bank as a secured claim in the approximate amount of $25,000.00 with no pre-petition arrearage. The debt is evidenced by a mortgage recorded in O.R. Book 452 pages 524, et. seq., of the Public Records of Gulf County, FL. The note and mortgage shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 20 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $268.23 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |

| | | |
|---|---|---|
| Class 4 – Appalachee Regional Planning Council | Impaired | The allowed secured claim of Class 4 creditor; Appalachee Regional Planning Council holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $73,074.53 with no pre-petition arrearage. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State. The note and security agreement shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at 5.25% interest over a term of 6 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $1,185.35 per month, or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |
| Class 5- Gulf County Tax Collector | Impaired | The allowed secured claim of Class 5 creditor; Gulf County Tax Collector On the real property located at 507 Highway 71, Wewahitchka, FL in the approximate amount of $6,388.97 for 2014 real property taxes shall be paid at 18% interest over 60 months in the amount of $162.23 per month commencing thirty days after the effective date of confirmation. |
| Class 6 – Insulation Distributors, Inc. | Impaired | The allowed secured claim of Class 6 creditor; Insulation Distributors, Inc. holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $11,053.55. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State. The note and security agreement shall be modified to reflect a new note amount in the amount due as of the date of filing which shall be repaid at the rate of $1,000.00 per month in addition to ongoing orders which are COD. Insulation Distributors, Inc. is an essential trade creditor and has agreed to the terms with the Debtor pre-petition in order for the Debtor to continue to be able to purchase product from the vendor. |
| Class 7– Insulation Distributors, Inc. | Unimpaired | The Class 7 creditor holds a mortgage on real property located at 507 Hwy 71, Wewahitchka, FL. The Debtor's mortgage shows  a debt of $43,908.69; and is recorded OR 494 PAGE 104, et. sq. of the Public Records of Gulf County, FL.   The debt has been paid in full. The note and mortgage held by Insulation Distributors, Inc. shall be cancelled of record by the recording of the Plan of Reorganization and the Order Confirming Plan in the Public Records of Gulf County, FL as the debt has been previously paid in full. |
| Class 8– Insulation Distributors, Inc. | Unimpaired | The Class 8 creditor holds a mortgage on real property located at 507 Hwy 71, Wewahitchka, FL. The Debtor's mortgage shows a debt of $61,689.12; and is recorded OR 520 PAGE 221, et. sq. of the Public Records of Gulf County, FL.   The debt has been paid in full. The note and mortgage held by Insulation Distributors, Inc. shall be cancelled of record by the recording of the Plan of Reorganization and the Order Confirming Plan in the Public Records of Gulf County, FL as the debt has been previously paid in full. |

| | | |
|---|---|---|
| Class 9 – On Deck | Impaired | The allowed secured claim of Class 9 creditor; On Deck, holds a security interest on the Debtor's inventory, equipment and receivables. The secured claim is in the approximate amount of $22,147.90. The debt is evidenced by a UCC-1 Financing Statement filed with the Secretary of State.  The account shall be evidenced by a new note in the amount of $22,147.90 which shall be repaid at 5.25% interest over a term of 5 years commencing on the effective date of confirmation with payments of principal and interest commencing 30 days thereafter in the amount of $420.50 per month or commencing upon the commencement of adequate protection payments. All adequate protection payments shall be credited to the principal and interest payments as restructured. |
| Class 10 – Wayne Dalton, a Division of Overhead Door Corporation | Impaired | The allowed secured claim of Class 10 creditor, Wayne Dalton which holds a purchase money security interest in inventory and goods purchased within 60 days of filing shall remain unimpaired as an essential trade creditor.   The claim is approximately $17,933.58 which shall be paid in the ordinary course of business at the rate of $2,500.00 per month pursuant to a pre-petition agreement in order to allow the Debtor to continue to purchase goods and materials.   Payments are applied to past due invoices first and then to present COD purchases.   Interest is waived as long as the Debtor remains in good standing. |
| Class 11 – ThermaSeal, USA | Unimpaired | ThermaSeal, USA has an ongoing open account in which the Debtor purchases spray foam insulation on a weekly basis and pays for same weekly in the ordinary course of business. |
| Class 12 - General Unsecured Creditors (less than $2,000.00) | Impaired | Allowed unsecured claims of **less than $2,0000.00 according to the attached payment schedule** shall be paid in full within thirty (30) days after the effective date of the Plan for administrative convenience. |
| Class 13 - General Unsecured Creditors (more than $2,000.00) | Impaired | General unsecured creditors shall be paid on a pro rata basis according to the attached schedule from net disposable income during the term of the Plan. |
| Class 14 – Chaka Monchere Dixon, individually and as next friend of Xzavier Latrez Dixon, a minor and Xanlyah Cereniti Tru Dixon, a minor | Impaired | The Debtor's insurance carrier is defending the action brought by the Class 14 creditors; the stay will be lifted to allow the insurance company to defend the claim; in the event of any recovery in excess of policy limits; the claim, if allowed, will be treated as a Class 13 unsecured claim. |

| and Jaketra Bonner, individually and as mother and next friend of Ny'gel Jarreall Malichi, a minor. | | |
|---|---|---|

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable order.   The Bay County Tax Collector has a disputed claim as noted in Class 12, above.

5.03    Settlement of Disputed Claims.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04    Objections to all claims which are disputed have been filed or will be filed prior to hearing on the Disclosure Statement.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

The Debtor assumes all executory contracts unless rejected by Court order prior to Confirmation hearing.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    The Debtor shall fund the Plan from the normal operation of the Debtor's business.

7.02    The officers and directors of the Debtor will remain the same as previously outlined in the Disclosure Statement.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01     Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.02     Effective Date of Plan.  The effective date of this Plan is thirty days following the date of the entry of the order of confirmation providing no appeal is pending.   But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03     Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04     Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05     Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06     Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## COMPROMISE, RELEASE, INDEMNIFICATION, ABANDONMENT AND
## SETTLEMENT OF CLAIMS

9.01.     *Compromise, Settlement and/or Discharge.*  Upon substantial completion of payments under the Plan, the Debtors shall be discharged as provided by Chapter 11 of Title 11 of the United States Bankruptcy Code.

(a) *Scope.*  Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a full compromise, release and settlement, effective as the Effective date, of all claims including claims arising from the surrender of real property in satisfaction of the allowed secured claims on investment property.  The compromise, release, and settlement of all claims against the Debtor as included within the Chapter 11 Plan, shall be effective as to each Claim against the Debtor regardless of whether a proof of claim there for was filed, whether the Claim is an Allowed Claim, whether the Claim has been asserted, or whether the holder thereof votes to accept the Plan.  On the Effective Date, as to every compromised, settled, or discharged Claim, any holder of such Claim shall be precluded from asserting such Claim against the Debtor or the Reorganized Debtor's assets or properties, or any third party contracting pre-petition or post-petition with the Debtor, or any other or further Claim based upon any document,

instrument, act, omission, transaction or other activity of any kind or nature relating to any Claim against the Debtor for deficiency from the liquidation of any real property.

**(b) *Injunction.* In accordance with sections 105, 524 and 1141 of the Bankruptcy Code, the compromise and settlement and/or discharge provided by this section and by the Confirmation Order, *inter alia,* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims discharged hereby and shall further act as a permanent injunction against any claimant from commencing or continuing any civil, administrative or other action against the Debtor, any officer, agent, or employee of the Debtor for acts as an officer or director of the Debtor and for all personal guarantees signed by Jesus Antonio Muina, principal of the Debtor.**

(c) *Satisfaction of Claims and Interests.* The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.01    The Court shall retain jurisdiction until the estate is closed or this case is dismissed to hear and resolve all disputes between the Debtor and any creditor, including but not limited to disputes as to validity, amount and classification of any claim and disputes with creditors who are being paid directly within this Plan.

10.02    Possession of the Debtor's property shall remain with the Debtor and except as provided in this Plan, title to Debtors' property shall vest in the Debtor upon confirmation of a Plan free and clear of all liens and encumbrances except as otherwise provided for herein.

10.03    Substantial Completion of the Plan.  Substantial completion of the Plan shall occur after the effective date of confirmation and upon the Debtor executing notes with creditors provided for under the Plan and commencing payment thereon.

10.04    Anything herein to the contrary notwithstanding, the Debtor does not, by filing this Plan or seeking confirmation, waive its right to request that this case be dismissed at any time prior to or after confirmation, and the Debtor specifically reserves such right.

10.05    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that      binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to      bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual    confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly,"      and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

In the event a class does not accept the Plan, the Debtor intends to proceed with cram down at the confirmation hearing.

Respectfully submitted on the _30___ day of December, 2014.

TIFGO ENTERPRISES, INC

By: /s/Jesus Antonio Muina, President

**Jesus Antonio Muina, President**

The Plan Proponent

By: /s/Charles M. Wynn

Charles M. Wynn

Charles M. Wynn Law Offices, P.A.
PO Box 146
Marianna, FL   32447
(850) 526-3520
FL Bar No.   0241695
Attorney for the Plan Proponent
Court@Wynnlaw-fl.com

9

TIFCO ENTERPRISES

Proposed Payment Schedule

| Class # | Secured Creditors | Claim Amount | Monthly Payment | Interest | Term |
|---|---|---|---|---|---|
| 2 | Ameris Bank formerly Prosperity Bank | $ 299,169.76 | $ 2,015.94 | 5.25% | 20 years |
| 4 | Apalachee Regional Planning Council | $ 73,074.53 | $ 1,185.35 | 5.25% | 6 years |
| 3 | Ameris Bank - Line of Credit | $ 25,000.00 | $ 268.23 | 5.25% | 20 years |
| 5 | Gulf County Tax Collector | $ 6,388.97 | $ 162.23 | 18.00% | 60 months |
| 9 | OnDeck - UCC | $ 22,147.90 | $ 420.50 | 5.25% | 60 months |
| | TOTAL | $ 425,781.16 | $ 4,052.25 | | |

| Class # Unsecured Creditors | Claim Amount | pro rata share | Monies Available | Month 1-7 | Monies Available | Month 8 | Monies Available | Months 9-11 |
|---|---|---|---|---|---|---|---|---|
| American Express | $ 26,080.69 | 4.91% | $ - | $ - | $ 2,066.42 | $ 101.52 | $ 2,500.00 | $ 122.83 |
| Bank of America | $ 5,173.25 | 0.97% | $ - | $ - | $ 2,066.42 | $ 20.14 | $ 2,500.00 | $ 24.36 |
| Corporation Service Company (representative for OnDeck) | | | | | | | | |
| Demilec USA | $ 13,913.29 | 2.62% | $ - | $ - | $ 2,066.42 | $ 54.16 | $ 2,500.00 | $ 65.53 |
| GACO Western | $ 240,230.42 | 45.26% | $ - | $ - | $ 2,066.42 | $ 935.20 | $ 2,500.00 | $ 1,131.43 |
| Hanson Directory Services | $ 8,353.51 | 1.57% | $ - | $ - | $ 2,066.42 | $ 32.52 | $ 2,500.00 | $ 39.34 |
| Icynene | $ 97,790.00 | 18.42% | $ - | $ - | $ 2,066.42 | $ 380.69 | $ 2,500.00 | $ 460.57 |
| LaPolla | $ 118,321.56 | 22.29% | $ - | $ - | $ 2,066.42 | $ 460.62 | $ 2,500.00 | $ 557.27 |
| Sherwin | $ 13,905.86 | 2.62% | $ - | $ - | $ 2,066.42 | $ 54.13 | $ 2,500.00 | $ 65.49 |
| Southern Ideal Doors | $ 7,043.43 | 1.33% | | | $ 2,066.42 | $ 27.42 | $ 2,500.00 | $ 33.17 |
| TOTAL | $ 530,812.01 | 100.00% | | | | $ 2,066.41 | | $ 2,499.99 |

TO BE PAID PURSUANT TO AGREEMENT IF ORDER ENTERED BY COURT

| | Claim Amount | Month 1-7 | Month 8 | Months 9-11 |
|---|---|---|---|---|
| 6 Insulation Distributors Inc - 12 months | $ 11,053.55 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| 10 Wayne Dalton - 7/months | $ 17,933.58 | $ 2,500.00 | $ 433.58 | $ - |

TO BE PAID IN FULL UPON CONFIRMATION

| | |
|---|---|
| GB Collects, LLC for RSUI Group, INC | $ 500.00 |
| Pitney Bowes | $ 1,073.15 |
| Strategic Value Media | $ 350.00 |
| TOTAL | $ 1,923.15 |

| Monies Available | Month 12 | Monies Available | Months 13-60 | Total Payments to Creditor |
|---|---|---|---|---|
| $ 3,446.45 | $ 169.32 | $ 3,500.00 | $ 171.96 | $ 8,106.87 |
| $ 3,446.45 | 33.59 | 3,500.00 | 34.11 | 1,614.20 |
| $ 3,446.45 | 90.33 | 3,500.00 | 91.74 | 4,322.47 |
| $ 3,446.45 | 1,559.76 | 3,500.00 | 1,584.00 | 74,701.62 |
| $ 3,446.45 | 54.24 | 3,500.00 | 55.08 | 2,600.65 |
| $ 3,446.45 | 634.93 | 3,500.00 | 644.80 | 30,418.71 |
| $ 3,446.45 | 768.24 | 3,500.00 | 780.17 | 36,803.78 |
| $ 3,446.45 | 90.29 | 3,500.00 | 91.69 | 4,322.47 |
| $ 3,446.45 | 45.73 | 3,500.00 | 46.44 | 2,188.14 |
| | $ 3,446.43 | | $ 3,499.98 | |
| | $ 53.55 | | $ - | $ 12,710.78 |
| | $ - | | $ - | $ 17,933.58 |
| | | | | $ 195,723.27 |

## TIFCO ENTERPRISES, INC

### EXHIBIT B - IDENTITY AND VALUE OF MATERIAL ASSETS OF DEBTOR

| Asset | Value |
|---|---|
| Centennial Bank Checking Account ending in 7401 | $10,414.91 |
| Ameris Bank Checking Account ending in 2501 | $793.73 |
| Accounts Receivables | $105,160.72 |
| Right to recover preferential transfer to CEMEX due to levy on corporate checking account within 90 days of filing the Petition for Relief.   Amount Listed is an approximation. | $6,800.00 |
| 30' gooseneck trailer with foam insulation rig.   The equipment and interior of the trailer has been damaged due to fire.   The air dryers still works, but most of the equipment is not working and damaged beyond repair.   Valued at salvage value only. | $5,500.00 |
| 2005 Chevrolet, 3500 HD work truck, flatbed, odometer 105,566 , good running condition | $7,229.00 |
| 2008 Chevrolet 3500HD 4 door crew cab, odometer 216,809, interior poor condition | $6,386.00 |
| Early 90's cargo box truck, 20' not in running condition, used only for storage.   Salvage value | $400.00 |
| 1996 Isuzu, 14' box cargo truck, motor is blown, poor condition, salvage value only | $400.00 |
| 2004 extended cab work truck, odometer 250,000, 4 door, replaced engine and transmission, running | $1,162.00 |
| Thompson Caterpillar older, 2220 hours, working | $1,900.00 |
| Office - Older computer, broken computers, parts - 30; refrigerator, top freezer - 25; desk, 3 chairs, table, file cabinet - 64; dell vostro computer 2012 - 60; desk, credenza, file cabinet, chairs - 82; four, 4 drawer file cabinets - 48; credenza, HP office jet printer, table 2 drawer file cabinet - 55; Bizhub 180 copy machine, AD504 - 153; miscellaneous supplies - 25; manometer, blower door fan, retrotec - 330; gas fireplace with mantle and surround - 242; desk, credenza, small side cabinet, file cabinet - 72; dell monitor, HP computer tower - 24; HP color laser printer 2605 DN - 29; desk chair, compaq monitor and HP tower PC - 31; miscellaneous pictures - 34; stool, vacuum, chair, silk tree - 33; fan, lamp - 14 | $1,351.00 |
| 1998 International Truck Vin # 1HTSCABM1WH529038  -  Apalachee Regional Planning Council has a lien as of 6/27/13 - UCC 201206687027 ($2,580.00 valued by Mallory - Debtor anticipates replace value for a similar vehicle would be $12,000.00)<br>2001 Chevy Vin # 1GCCS145018246150 - box truck - does not run - motor blown - Apalachee Regional Planning Council has a lien as of 6/27/13 - UCC 201206687027 ($300.00 valued by Debtor)<br>2005 Chevy Vin # 1GCEK14T05Z261738 - truck that Tony drives - UCC 201206687027 ($849.00 valued by appraiser; Debtor anticipates it is worth $5,000)<br><br>Unit below was valued at $27,500.00 but the Debtor believes it would have a replacement value of approximately $60,000.00)<br>Generator - SDMO John Deere-Serial #J40UC2M09006416; Compressor Model #5Z0639B; Serial #L6/14/04-00014; Trailer - Arising Industries Model #824VTRB; Proportioners - GRACO E-30 Serial #A1336 Proportioners - GRACO E-30 Serial #A1507;2) 210 Hose sections; 2) P-2 Guns | $77,300.00 |
| Warehouse Items:  Star insulation blowing machine, commercial vacuum, Capital - 135; marathon compressor, not working - 74; garage door surplus rails, door tracks, struts, panels, spring bars, door equipment, salvage value only - 20; vinyl coated shelves 12' long - 423; E30 reactor, Graco spray foam machine, working - 1900; miscellaneous scaffolding, chemicals, miscellaneous fiberglass - 25; polystyrene baffles - 10; fiberglass balls, blo in , 90 bags - 492; bags of blow in cellulose - 200; fiberglass insulation , 100 bags - 730; compressor, not working, scrap value - 25; Graco, magnum Pro X9 spray machine, not working - 15; thermal barrier foam polyurethane, 6 buckets - 150; cardboard baffles - 2; miscellaneous net, hoses, ladders - 52; metal cabinet, 2 door - 10; miscellaneous pipe, gas logs, supplies - 39 | $4,302.00 |

# Tifco Enterprises, Inc

## EXHIBIT C- PREPETITION FINANCIAL STATEMENTS

# NONE

**EXHIBIT D**

**TIFCO ENTERPRISES, INC**

**Summary of Monthly Operating Reports**

**The first report is not due at the time of filing this plan**

# United States Bankruptcy Court
## Northern District of Florida

In re   Tifco Enterprises, Inc

                                             Debtor(s)

Case No.                  
Chapter   11

## LIQUIDATION SUMMARY

| Description | Total Amount | Real Property | Personal Property |
|---|---|---|---|
| Total Property Value | 562,348.36 | 333,249.00 | 229,099.36 |
| Less: | | | |
| Schedule D. Secured Claims | 439,318.67 | 333,249.00 | 106,069.67 |
| Schedule C. Exemptions | 0.00 | 0.00 | 0.00 |
| **Interest in Nonexempt Property** | 123,029.69 | 0.00 | 123,029.69 |
| Less: | | | |
| Estimated Chapter 7 Admin Expenses | 9,401.48 | | |
| Schedule E. Priority Claims | 0.00 | | |
| **Available to General Unsecured** | 113,628.21 | | |
| Total General Unsecured | 636,386.75 | | |
| Percent Distribution | 17.86% | | |

| Details: | | | |
|---|---|---|---|
| Unsecured from Schedule D | 92,093.76 | 12,309.73 | 79,784.03 |
| Unsecured from Schedule E | 0.00 | | |
| Unsecured from Schedule F | 544,292.99 | | |
| Estimated Chapter 7 Administrative Expenses: | | | |
| 11§326 Trustee Compensation on $123,029.69 | 9,401.48 | | |
| Add'l Trustee Cost as 0% of §326 Fee | 0.00 | | |
| Additional Admin Expense | 0.00 | | |
| Total Estimated Admin Expense | 9,401.48 | | |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

IN RE: TIFCO ENTERPIRSES, INC.                                    Chapter 11
     Debtor.

                                Case No. _____

_____\

**EXHIBIT F - CASH ON HAND**

**Cash on hand as of December 30, 2014, $ 7,752.89 + 2,535.50** = $10,288.39**
     *This figure is taken directly from the bank 's website on 12/30/14*

     ** Additional cash Debtor will accumulate from **net earnings** between now and the effective date of the Plan. *This figure is calculated by taking the monthly disposable income from schedule I & J and multiplying it by2 for the time period between now and the effective date of the plan.*

Less - All fees and costs associated with this bankruptcy case have been paid by Tifco Enterprises, Inc.

     Amount of administrative expenses payable on effective date of Plan ___0.00_____

     Amount of statutory costs and charges            0.00_____

     Amount of cure payments for executory contracts     ___0.00_____

     Other Plan Payments due on effective date of the Plan ***     ____0.00_____
     ***This must be paid within 30 days of confirmation.

            **Balance after paying these amounts**     **$10,288.39**

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

 _$__7,752.89_  Cash in Debtor's bank account as of December 30, 2014

+___2,535.50    Additional cash Debtor will accumulate from **net earnings** between now and the effective date of the Plan - *This figure is calculated by taking the monthly disposable income from schedule I & J and multiplying it by 4 for the time period between now and the effective date of the plan.*

+__0.00_____  Borrowing

+__0.00_____  Capital contributions

+__0.00_____  Other *(funds held in attorney's trust account to be applied to fees and costs upon court approval)*

 _$_10,288.39__**Total** *[This number should match "cash on hand" figure noted above]*

TIFCO ENTERPRISES

Proposed Payment Schedule

| Class # | Secured Creditors | Claim Amount | Monthly Payment | Interest | Term |
|---|---|---|---|---|---|
| 2 | Ameris Bank formerly Prosperity Bank | $ 299,169.76 | $ 2,015.94 | 5.25% | 20 years |
| 4 | Apalachee Regional Planning Council | $ 73,074.53 | $ 1,185.35 | 5.25% | 6 years |
| 3 | Ameris Bank - Line of Credit | $ 25,000.00 | $ 268.23 | 5.25% | 20 years |
| 5 | Gulf County Tax Collector | $ 6,388.97 | $ 162.23 | 18.00% | 60 months |
| 9 | OnDeck - UCC | $ 22,147.90 | $ 420.50 | 5.25% | 60 months |
| | TOTAL | $ 425,781.16 | $ 4,052.25 | | |

| Class # Unsecured Creditors | Claim Amount | pro rata share | Monies Available | Month 1-7 | Monies Available | Month 8 | Monies Available | Months 9-11 |
|---|---|---|---|---|---|---|---|---|
| American Express | $ 26,080.69 | 4.91% | $ - | $ - | $ 2,066.42 | $ 101.52 | $ 2,500.00 | $ 122.83 |
| Bank of America | $ 5,173.25 | 0.97% | $ - | - | $ 2,066.42 | $ 20.14 | $ 2,500.00 | $ 24.36 |
| Corporation Service Company representative for OnDeck | | | $ - | | $ - | | | |
| Demilec USA | $ 13,913.29 | 2.62% | $ - | - | $ 2,066.42 | $ 54.16 | $ 2,500.00 | $ 65.53 |
| GACO Western | $ 240,230.42 | 45.26% | $ - | - | $ 2,066.42 | $ 935.20 | $ 2,500.00 | $ 1,131.43 |
| Hanson Directory Services | $ 8,353.51 | 1.57% | $ - | - | $ 2,066.42 | $ 32.52 | $ 2,500.00 | $ 39.34 |
| Icynene | $ 97,790.00 | 18.42% | $ - | - | $ 2,066.42 | $ 380.69 | $ 2,500.00 | $ 460.57 |
| LaPolla | $ 118,321.56 | 22.29% | $ - | - | $ 2,066.42 | $ 460.62 | $ 2,500.00 | $ 557.27 |
| Sherwin | $ 13,905.86 | 2.62% | $ - | - | $ 2,066.42 | $ 54.13 | $ 2,500.00 | $ 65.49 |
| Southern Ideal Doors | $ 7,043.43 | 1.33% | | - | $ 2,066.42 | $ 27.42 | $ 2,500.00 | $ 33.17 |
| TOTAL | $ 530,812.01 | 100.00% | | | | $ 2,066.41 | | $ 2,499.99 |

TO BE PAID PURSUANT TO AGREEMENT IF ORDER ENTERED BY COURT

| | Claim Amount | | Monies Available | Month 1-7 | Monies Available | Month 8 | Monies Available | Months 9-11 |
|---|---|---|---|---|---|---|---|---|
| 6 Insulation Distributors, Inc - 12 months | $ 11,053.55 | | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | | $ 1,000.00 |
| 10 Wayne Dalton - 7 months | $ 17,933.58 | | $ 2,500.00 | $ 2,500.00 | | $ 433.58 | | $ - |

TO BE PAID IN FULL UPON CONFIRMATION

| | Claim Amount |
|---|---|
| GB Collects, LLC for RSUI Group, INC | $ 500.00 |
| Pitney Bowes | $ 1,073.15 |
| Strategic Value Media | $ 350.00 |
| TOTAL | $ 1,923.15 |

| Monies Available | Month 12 | Monies Available | Months 13-60 | Total Payments to Creditor |
|---|---|---|---|---|
| $ 3,446.45 | $ 169.32 | $ 3,500.00 | $ 171.96 | $ 8,106.87 |
| $ 3,446.45 | $ 33.59 | $ 3,500.00 | $ 34.11 | $ 1,614.20 |
| $ 3,446.45 | $ 90.33 | $ 3,500.00 | $ 91.74 | $ 4,322.47 |
| $ 3,446.45 | $ 1,559.76 | $ 3,500.00 | $ 1,584.00 | $ 74,701.62 |
| $ 3,446.45 | $ 54.24 | $ 3,500.00 | $ 55.08 | $ 2,600.65 |
| $ 3,446.45 | $ 634.93 | $ 3,500.00 | $ 644.80 | $ 30,418.71 |
| $ 3,446.45 | $ 768.24 | $ 3,500.00 | $ 780.17 | $ 36,803.78 |
| $ 3,446.45 | $ 90.29 | $ 3,500.00 | $ 91.69 | $ 4,322.47 |
| $ 3,446.45 | $ 45.73 | $ 3,500.00 | $ 46.44 | $ 2,188.14 |
| $ 3,446.43 | | $ 3,499.98 | | . |
| | $ 53.55 | | $ - | $ 12,710.78 |
| | $ - | | $ - | $ 17,933.58 |
| | | | | $ 195,723.27 |